UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARCSONA INC.,<br><br>             Plaintiff,<br><br>      v.<br><br>APPIRIO INC., et al.,<br><br>             Defendants. | Case No. 21-cv-05019-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. Nos. 47, 49 |

Defendants Appirio Inc. ("Appirio") and Daniel Lascell move to dismiss plaintiff Arcsona Inc.'s ("Arcsona") first amended complaint against them for promissory fraud. Dkt. Nos. 47, 49. The Court held a hearing on the motions on December 7, 2021. Dkt. No. 62. Having considered the parties' submissions and arguments, the Court grants defendants' motions to dismiss with prejudice.[1]

**I.   BACKGROUND**[2]

In June 2012, Arcsona and Appirio entered into an Independent Contractor Agreement

---

[1] All named parties have consented to magistrate judge jurisdiction. Dkt. Nos. 5, 8. While Arcsona also sues 10 "Doe" defendants, the complaint contains no allegations against these unnamed defendants. These Doe defendants are not "parties" for purposes of assessing whether there is complete consent of all parties to magistrate judge jurisdiction. *See Williams v. King*, 875 F.3d 500, 502–05 (9th Cir. 2017) (all named parties, whether served or unserved, must consent in order to vest jurisdiction in a magistrate judge); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020) (distinguishing *Williams* with respect to unnamed "Doe" defendants).

[2] The following facts are taken from Arcsona's first amended complaint (Dkt. No. 42). In relating these facts, the Court also takes judicial notice of the Independent Contractor Agreement (Dkt. No. 12-1, Ex. A) and excerpts of Daniel Lascell's deposition testimony (Dkt. No. 54, Ex. A, Ex. B), which are incorporated by reference in the complaint.

("the Agreement"). Dkt. No. 42 ¶ 7. Under the Agreement, Arcsona agreed to provide contract workers for deployment by Appirio at Appirio's request. *Id.* At the time, Daniel Lascell was Appirio's Secretary and General Counsel, and he signed the Agreement on Appirio's behalf. *Id.* ¶ 3; Dkt. No. 12-1, Ex. A at 4–5. Pursuant to the Agreement, Arcsona agreed to provide Appirio with independent contractors for professional services. Dkt. No. 12-1, Ex. A at 1. The preamble states in relevant part:

> The Independent Contractor Agreement (the "Agreement") sets forth terms under which Contractor (as identified below) shall at the request of Appirio Inc. . . . ("Appirio") provide professional services either directly to Appirio or to customers of Appirio on Appirio's behalf.

*Id.* at 1. A later section of the Agreement labeled "Services" states:

> Contractor shall provide professional services ("Services") to Appirio as described on one or more Statements of Work signed by Contractor and Appirio which reference this Agreement ("SOW" or "Statement of Work"). Contractor shall perform Services in a prompt manner and provide each Deliverable no later than the delivery dates specified in the applicable SOW. At the direction of Appirio, Contractor shall provide Services directly to Appirio or to customers of Appirio on Appirio's behalf.

*Id.* at 1 (sec. 2).

Arcsona alleges that Appirio induced Arcsona to sign the Agreement "by promising that ARCSONA could offer to provide contract resources for APPIRIO or its clients in the future when it knew it would not offer to do business with ARCSONA unless there was no other vendor who could provide the necessary resources." Dkt. No. 42 ¶ 8. Arcsona alleges that at the time Appirio made this promise, Mr. Lascell had already "resolved not to do any APPIRIO business with ARCSONA unless Appirio had no choice but to use ARCSONA contract resources. In other words, if the choice was between ARCSONA and any other company, APPIRIO would choose the other company regardless of the quality of the ARCSONA contract resource." *Id.* ¶ 9. Arcsona alleges that "at the time [Appirio] entered into said Agreement and thereafter APPIRIO never intended to request that ARCSONA fill any of its open positions or to evaluate in good faith any contract resources offered by ARCSONA for open APPIRIO positions." *Id.* ¶ 11. Arcsona relied on Appirio to "to act in good faith . . . in requesting ARCSONA contract resources and evaluating them for open APPIRIO positions." *Id.* ¶ 13.

After the Agreement was signed, Arcsona offered many contractors to Appirio, but Appirio approved only two workers. *Id.* ¶ 14. Arcsona says that it did not know Appirio intended to use Arcsona workers only if Appirio had no other options available until May 29, 2019, when Mr. Lascell testified to that effect in a deposition in another case. *Id.* ¶ 19; *see* Dkt. No. 54, Ex. A at 118–19, Ex. B ¶ 3.

Arcsona alleges that as a result of defendants' bad faith conduct, Arcsona has suffered and continues to suffer "lost time and expenses in attempting to place contract workers with defendant APPIRIO pursuant to said Agreement in a total amount presently unknown, but in excess of $2,500.00[*sic*]." Dkt. No. 42 ¶¶ 22–23. The complaint seeks "compensatory damages, including lost time and lost profits, in amounts according to proof in excess of $25,000." Dkt. No. 42 at 7.[3]

Defendants Mr. Lascell and Appirio now move to dismiss Arcsona's first amended complaint under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure for failure to state a claim and to plead fraud with the necessary particularity. Dkt. Nos. 47, 49. Mr. Lascell again argues that Arcsona's claim is barred as a matter of law by the economic loss rule.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted 'test the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Although a court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018).

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP*

---

[3] Arcsona represents that the amount in controversy exceeds $75,000.00. *See* Dkt. No. 1-3; Dkt. No. 36 at 2.

1  *Exploration (Alaska)*, 643 F.3d 681, 690 (9th Cir. 2011). The court "need not … accept as true
2  allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v.*
3  *Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (citing *Sprewell v.*
4  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). Further, while a complaint need not
5  contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to
6  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)
7  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible
8  when it "allows the court to draw the reasonable inference that the defendant is liable for the
9  misconduct alleged." *Id.*

10  **B.  Rule 9(b)**
11  Rule 9(b) requires that allegations of fraud be stated with particularity. Specifically,
12  averments of fraud must "be accompanied by 'the who, what, when, where, and how' of the
13  misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)
14  (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). When an "entire claim within a
15  complaint[] is grounded in fraud and its allegations fail to satisfy the heightened pleading
16  requirements of Rule 9(b), a district court may dismiss the . . . claim." *Id.* at 1107. A motion to
17  dismiss a complaint "grounded in fraud" under Rule 9(b) for failure to plead with particularity is
18  "the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim."
19  *Id.*

20  **III.  DISCUSSION**
21  To state a claim for promissory fraud, Arcsona must plead that Appirio did not intend to
22  perform a promise at the time the promise was made, that the promise was intended to deceive and
23  induce reliance, that it did induce reliance, and that this reliance resulted in damages. *Fleet v.*
24  *Bank of Am. N.A.*, 229 Cal. App. 4th 1403, 1411 (2014). "'Promissory fraud' is a subspecies of
25  the action for fraud and deceit. A promise to do something necessarily implies the intention to
26  perform; hence, where a promise is made without such intention, there is an implied
27  misrepresentation of fact that may be actionable fraud." *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638
28  (1996).

Here, Arcsona asserts one claim for promissory fraud against Appirio and Mr. Lascell. Arcsona says that it "did not rely on statements [by Appirio or Mr. Lascell] other than the terms of the [Agreement]," Dkt. No. 50 at 14, and that Mr. Lascell "did not make any express misrepresentations" that differed from the terms of the Agreement, Dkt. No. 51 at 14. Rather, Arcsona alleges that defendants entered into the Agreement with no intention of performing the terms of the contract. Dkt. No. 42 ¶¶ 17–18. Specifically, Arcsona says that Mr. Lascell's stated intention to use Arcsona-supplied workers only if no other workers were available demonstrates that defendants acted in bad faith. Dkt. No. 42 ¶ 9; Dkt. No. 50 at 8–11, 13; Dkt. No. 51 at 10–11; Dkt. No. 42 ¶¶ 8–9, 16–24. In other words, Arcsona argues that the Agreement itself contains a promise (or promises) that defendants did not intend to perform when the Agreement was signed. *See* Dkt. No. 50 at 6 ("allegations of a bad faith state of mind existing at the time the contract was entered into amounts [*sic*] to a promise made without any intention of performing it and will support a claim of promissory fraud"); *see also* Dkt. No. 51 at 5 (same).

Arcsona's argument depends on the premise that the terms of the Agreement are inconsistent with defendants' plan to use Arcsona-supplied workers only if no other workers were available. But nothing in the Agreement supports this premise. The Agreement states that "[a]t the direction of Appirio, [Arcsona] shall provide Services directly to Appirio or to customers of Appirio on Appirio's behalf." Dkt. No. 12-1 at 1 (preamble, sec. 2). Nothing in the Agreement requires Appirio to request or accept a particular number of contract workers from Arcsona, or to accept more than the two Arcsona-supplied workers Appirio hired. Moreover, nothing in the Agreement requires Appirio to base its decision to request or accept professional services from Arcsona solely on the qualifications of the proposed contract workers and without regard to other business considerations. If, as Arcsona alleges, Appirio decided to use Arcsona's professional services only when it could obtain workers from no other source, such a decision does not violate any term of the Agreement. In short, Arcsona's unilateral expectations regarding the volume of business it would do with Appirio do not appear to have been communicated to defendants or memorialized in the Agreement.

In opposing defendants' motions to dismiss, Arcsona relies heavily on *Locke v. Warner*

*Bros.*, 57 Cal. App. 4th 354 (1997) and *Lazar v. Super. Ct.*, 12 Cal. 4th 631 (1996). Dkt. No. 50 at 5–6, 15–16; Dkt. No. 51 at 14–15. Both cases are distinguishable.

In *Locke*, the plaintiff, an actress and film director, entered into an agreement with Warner Bros. that required her to submit to Warner Bros. any film she was interested in developing before submitting it to any other studio and gave Warner Bros. 30 days to accept or reject the proposal. 57 Cal. App. 4th 354, 358. Warner Bros. did not develop any of the plaintiff's proposed films. Plaintiff contended that Warner Bros. never intended to make any films with her and categorically refused to work with her, regardless of the merits of her proposals. *Id.* at 358-59, 365. Warner Bros. argued that it had discretion to make subjective creative decisions about which films to produce. *Id.* at 365. The California Court of Appeals affirmed that right but concluded that if Warner Bros. refused to even consider the subjective merits of the plaintiff's proposals, as she alleged, then a triable issue of fact existed regarding whether Warner Bros.' promise to consider her proposals was made in bad faith and therefore fraudulent. *Id.* at 367-68. By contrast here, Arcsona has identified nothing in the Agreement that suggests defendants were required to exercise their discretion according to any particular criteria or other considerations. And it is undisputed that Appirio *did* consider and hire two contract workers supplied by Arcsona.

In *Lazar*, the plaintiff, who had been president of a restaurant equipment company in New York, alleged that the defendant company made specific representations that induced him to relocate and accept the company's job offer. Those representations were false when they were made. 12 Cal. 4th 631, 635–37. The California Supreme Court held that the plaintiff stated a cause of action for fraudulent inducement of his employment contract, and that he was not limited to an action for breach of contract. *Id.* at 639. By contrast here, Arcsona does not allege that defendants made any representations that induced him to enter into the Agreement, let alone any false representations that could support a claim of promissory fraud.

Accordingly, the Court concludes that the first amended complaint does not state a claim for promissory fraud against Appirio or Mr. Lascell. The Court does not reach Mr. Lascell's argument that Arcsona's claim against him is barred by the economic loss rule.

## IV. LEAVE TO AMEND

Arcsona seeks further leave to amend its complaint if the Court concludes that it fails to state a claim. Dkt. No. 50 at 16; Dkt. No. 51 at 15. Arcsona acknowledges that it has already had one opportunity to amend the complaint but argues that its counsel suffered a serious concussion shortly after the Court's first order of dismissal that impacted Arcsona's ability to adequately amend the complaint. *See* Dkt. No. 50 at 16. However, in his declaration, Arcsona's counsel focuses principally on the adequacy of the complaint's allegations with respect to application of the economic loss rule. *See* Dkt. No. 54 ¶ 5. As noted above, the Court's decision does not depend on application of the economic loss rule.

Arcsona's opposition briefing does not identify any amendments that Arcsona believes it could make that would address the deficiencies that the Court identified in its earlier order dismissing the complaint or that defendants identify in their respective motions to dismiss the FAC. During the hearing on defendants' motions, the Court inquired what amendments, if any, Arcsona would make if given leave to amend. Arcsona's counsel did not identify any proposed amendments. Dkt. No. 62.

As Arcsona has not explained how it would cure the deficiencies in the first amended complaint if it were given leave to amend a second time, the Court is persuaded that leave to amend is not warranted and would be prejudicial to defendants. *See Gardner v. Martino*, 563 F.3d 981, 991 (9th Cir. 2009) (finding no abuse of discretion where district court denied plaintiffs' request to amend the first amended complaint because plaintiffs "did not propose any new facts or legal theories for an amended complaint and therefore gave the Court no basis to allow an amendment"). Accordingly, the Court denies Arcsona's request for leave to amend.

## V. CONCLUSION

For the foregoing reasons, the Court grants defendants' motions to dismiss Arcsona's first amended complaint with prejudice.

//
//
//

1 **IT IS SO ORDERED.**

2 Dated: January 12, 2022

4 VIRGINIA K. DEMARCHI
5 United States Magistrate Judge